# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LOUIS W. JONES, SR.,**   ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | |
| v.   ) | **CIVIL ACTION NO.:** |
| ) | **2:16-cv-00400-SGC** |
| **UAB HEALTH SYSTEM,**   ) | |
| ) | |
| **Defendant.**   ) | |
| ) | |

## PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

Plaintiff, Louis Jones, Sr. ("Jones" or "Plaintiff"), submits this surreply in accordance with this Court's April 5, 2017 Order granting Plaintiff's request for leave to file the same. (Doc. 30). In accordance with the Court's Order, Plaintiff will only respond directly to those instances in which he contends, based on evidence already before the Court, that Defendant's reply brief incorrectly characterizes evidence as undisputed or indisputable.

Defendant contends that Plaintiff failed to offer evidence contradicting Defendant's stated reasons for terminating Plaintiff's employment. (Doc. 27, pp. 1-2). Defendant states that Plaintiff does not and cannot dispute the following:

- Information Security and Tech Support employees discovered and investigated a security violation, and they attributed it to Plaintiff. None of these individuals knew about Plaintiff's prior protected activity. (citations omitted)

1

**Plaintiff's Response**: Defendant only uses this information to misdirect the Court. Dunkerley was the decision maker, not the Information Security and Tech Support employees. (Doc. 25, Ex. 32, p. 4). The discovery of a security violation does not change the fact that Dunkerley – the decision maker in this case – knew that Plaintiff did not commit the violation because Plaintiff was not in the office when the violation occurred. (Doc. 25, Ex. 1, pp. 51:14-52:10; Ex. 6; Ex. 3, pp. 62:2-9, 252:22-257-14).

As discussed in Plaintiff's Opposition to Summary Judgment, and further below, Dunkerley set forth in the termination letter – perhaps unintentionally – that he had a conversation in the hallway with Plaintiff **after the alleged security violation occurred** but **before Plaintiff made it to his work station for the first time that morning.** Viewing the evidence in the light most favorable to Plaintiff, he could not have committed the alleged security violation, and thus, the mere discovery of a security violation by individuals unfamiliar with Plaintiff's protected conduct is immaterial when the decision maker as to Plaintiff's termination knew Plaintiff did not commit the security violation[1].

---

[1] Defendant states in footnote 4 that "Dunkerley's **only involvement** was an interview about events and communications with Plaintiff on April 13 and 14." (Doc 27, p. 7, n.4) (emphasis added). However, Bandy sought out Dunkerley's input in the outcome of the investigation when he asked Dunkerley to review the Incident Response Report to verify "what happened" and to verify that he had the "right date and time frame." (Doc. 25, Ex. 2 pp. 121:18-124:1; Ex. 31, Bates 2156). This encounter did not occur during an initial interview into events. A review of Bandy's deposition testimony reveals numerous examples of Dunkerley's involvement in the investigation and

- Computer activity logs indicated that the security breach was performed with Plaintiff's user ID from Plaintiff's computer at his work station. (citations omitted)

**Plaintiff's Response**: Again, Defendant hopes that the Court will overlook the fact that the decision maker – the same person about whom Plaintiff complained three (3) times, and the same person who told HR he would "take the gloves off" on Plaintiff – already knew that Plaintiff did not commit the violation. The evidence before the Court, when viewed in the light most favorable to Plaintiff, shows that Dunkerley knew about each of the three (3) complaints Plaintiff filed against him, and that he knew Plaintiff was not in the office at 8:17:48 a.m. on April 14, 2015. (Doc. 25, Ex. 6). Thus, regardless of what the activity logs "**indicated**," the evidence shows that Dunkerley knew Plaintiff did not commit the violation when he terminated Plaintiff.

- The security cameras and badge access data confirmed that Plaintiff was in the building at the time of the security breach. (citations omitted)

**Plaintiff's Response**: Viewing the evidence in the light most favorable to Plaintiff, the security cameras **actually confirm that Plaintiff was not in the building at the time of the security breach**. Defendant included in its Incident Response Report

---

termination. HR even had Dunkerley approve the wording in the termination letter. (Doc. 25, Ex. 33). Plaintiff directed the Court to specific evidence of Dunkerley's immersion in the investigation, Dunkerley's willingness to lie to Bandy and HR about relevant information, and Bandy's willingness to blindly "take Dunkerley's word for it" when it mattered.

3

photographs with time stamps showing that Plaintiff was not in the building at 8:17:48 a.m. (Doc. 25, Ex. 7, Bates 116-18). This timeline is corroborated by Dunkerley's termination letter (Doc. 25, Ex. 6), and Plaintiff's testimony, which, collectively, reveal that the alleged security incident occurred – if it occurred at all – before Plaintiff arrived to the office on April 14, 2015. (Doc. 25, Ex. 6; Ex. 1, pp. 51:14-52:10). Bandy did not verify the accuracy or inaccuracy of the time stamps, and yet again, just took someone's word for it. (Doc. 25, Ex. 2, pp. 141:7-20).

- When Mr. Bandy questioned him, Plaintiff had no explanation for why the security violation was associated with his user ID at his work station. (citations omitted)

**Plaintiff's Response**: Although this statement is patently inaccurate, Plaintiff's inability to explain away something that he did not have anything to do with is not undisputed evidence supporting Defendant's Motion for Summary Judgment. Such an argument is tantamount to taking the position that it is undisputed that the sky is blue, and therefore, summary judgment is proper. Plaintiff, in fact, gave Bandy as much information as possible. He also made plain for Bandy that he did not know how to commit the alleged violation; that he did not have a reason for creating the security violation even if he knew how; and that he did not believe he was in the office at the time the alleged violation occurred. (See Doc. 25, Ex. 7, Bates 124-27). The emails contained in the Incident Response Report, which are a part of the record

in this case, reveal that Plaintiff offered a substantial amount of information to Bandy in response to his inquiries.

- UABHS felt the security violation was serious, and Information Security employees – who did not know about Plaintiff's protected activity – agreed.

**Plaintiff's Response**: Again, the majority of this statement is an attempt to obscure the fact that Dunkerley was the decision maker, and that Dunkerley **knew Plaintiff was not at work when the alleged violation occurred**. Setting aside the attempt at misdirection, however, Bandy stated that he did **not believe that the alleged, attempted removal of a UserID – even if Plaintiff had committed the violation – was a good reason to terminate him**. (Doc. 25, Ex. 2, p. 209:14-22). In reviewing UABHS's progressive discipline policy with Dunkerley at his deposition, he was unable to identify any portion of the policy which dictated that Plaintiff should be accelerated to immediate termination for the alleged security violation, even if he had committed it. (Doc. 25, Ex. 3, pp. 281:12-282:11). The final Incident Response Report made no mention of why such an attempted removal would be such a serious offense; instead, it merely speculated and made conclusory allegations about why Plaintiff might have wanted to remove his UserID. (Doc. 25, Ex. 7, Bates 113-14). Contrary to these unfounded conclusions, Plaintiff, time and time again, insisted that he did not attempt to remove his UserID, that he would not have any reason to attempt such a removal, that he did not know how to attempt a removal, and that he

believed that Dunkerley was setting him up for termination.  (Doc. 25, Ex. 7, Bates 124-27; Ex. 1, p. 82:2-21).

Regarding the termination letter, Defendant hopes to convince the Court that it does not create a genuine issue of material fact because Plaintiff did not recall for Bandy the hallway conversation Dunkerley referenced in the letter.  (Doc. 27, p. 5).  To the contrary, at deposition, Plaintiff recalled the conversation referenced by Dunkerley in the termination letter, and provided additional details about that conversation.  (Doc. 25, Ex. 1, pp. 51:14-52:10; Ex. 6; Ex. 3, pp. 62:2-9, 252:22-257-14).  Most importantly, Plaintiff pointed out that the conversation referenced in the termination letter occurred **in the hallway as Plaintiff came in that morning for the first time**.  (Doc. 25, Ex. 1, pp. 51:14-52:10).

To the extent a security violation even occurred on the morning of April 14, 2015, like the morning before, Plaintiff was not physically in a place to access the work station at the times he supposedly accessed it.  And Dunkerley knew it all along, but he inadvertently showed his hand by addressing the hallway conversation in the termination letter.  The letter states that the 8:17:48 a.m. security violation happened before **Plaintiff arrived that morning**. (Doc. 25, Ex. 1, pp. 51:14-52:10; Ex. 6).  This evidence, standing alone, creates a genuine issue of material fact as to whether Dunkerley knew Plaintiff was not responsible for an alleged security violation on April 14, 2015 at 8:17:48 a.m., but terminated him for it anyway.

Defendant also states in its Reply Brief that "[t]here is no evidence that someone else was logged in to Plaintiff's work station or even had access to his passwords." (Doc. 27, p. 3). Defendant alleges **as undisputed evidence** that "Plaintiff had remote access capabilities and was able to log in to the computer system from outside the office." (Doc. 27, p. 4). By stating to the Court it is undisputed that Plaintiff had "remote access", Defendant hopes to confuse the real issue: that it is indisputable that someone besides Plaintiff logged into his work station on April 13, 2015, the day before the alleged security violation.

Bandy's Incident Response Report includes an Active Directory ("AD") log or report showing Plaintiff's log on and log off events. One such entry on April 13, 2015, shows Plaintiff's UserID actively logging in to his computer at 7:00:02 a.m. Bandy testified at deposition that an active logon for Plaintiff's computer, 2UA3041NT5, only occurs where "**somebody walked up to the machine and hit control [+] delete**" and then entered credentials. Per Bandy's sworn testimony, the AD report showing that Plaintiff's UserID was used at 7:00:02 a.m. to log into Plaintiff's workstation, 2UA3041NT5, is "reflecting… **what is being done from that machine**" not what is being done remotely. (Pla. Ex. 2, pp. 221:20-223:21, 191:4-9).

Bandy testified that the AD report, which showed Plaintiff's UserID being used at 7:00:02 a.m. the day before his termination, only recorded active log on and

7

log off events which occurred **at the machine itself**.  It is undisputed that Plaintiff did not arrive to work, and thus "walk up to the machine and hit control [+] delete" and enter credentials **until after 8:30 a.m. on April 13, 2015**.  Whomever actively logged in to Plaintiff's computer at 7:00:02 a.m., had access to it for over an hour, and actively logged out at 8:27:09 a.m., just minutes before Plaintiff's arrival.  The records showing that someone other than Plaintiff logged in to his computer were available to Bandy and Dunkerley during and after the "investigation", but they were ignored by Bandy at Dunkerley's direction.

Accordingly, Defendant's "Remote Access" argument is patently without merit.  Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that someone other than Plaintiff logged into his work computer at 7:00:02 a.m. on April 13, 2015.  If a reasonable jury could make that conclusion, a reasonable jury could also conclude that, if a security violation occurred on April 14, 2015 at 8:17:48 a.m. from Plaintiff's work computer, someone other than Plaintiff committed the violation from Plaintiff's work computer, and that Dunkerley knew the same when he terminated Plaintiff's employment.

        Respectfully Submitted,

        /s/ Joshua A. Wrady_____
        *Attorney for the Plaintiff*
        Wrady & Michel, LLC
        505 20th Street North, Suite 1650
        Birmingham, AL 35203

Telephone: (205) 980-5700
Facsimile: (205) 994-2819
joshua@wmalabamalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2017, I electronically filed the foregoing using the CM/ECF system, which will send notification to the following counsel of record:

Anne Knox Averitt
Anne R. Yuengert
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203-2119

/s/ Joshua A. Wrady_____
OF COUNSEL

9